UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DARIN CONTINI,** <br>     **Complainant** <br> <br> **v.** <br> <br> **FEDERAL RESERVE BANK** <br> **OF BOSTON,** <br>     **Respondent.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY

### PARTIES

1. The Complainant, Darin Contini ("Contini"), is an individual residing in Provincetown, Massachusetts.

2. The Respondent, Federal Reserve Bank of Boston ("the Fed") is a private employer with a principal address at 600 Atlantic Avenue in Boston, Massachusetts.

### JURISDICTION

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because it alleges a violation of federal law.

### FACTS

4. Contini was employed by the Fed from June, 2001, to August 1, 2019. His last position was as a Manager in the Fed's Statistics department. As Manager, he was tapped for prestigious special projects: the Fed's Board of Directors appointed him to serve in a special capacity as Corporate Secretary to the Board and he served an extended term; he was also chosen to onboard the Fed's new Chief of Staff.

5. Contini's performance was excellent. His 2017 performance evaluation, for example, reflects that he "demonstrated business expertise and perspective while making solid and

reliable contributions to the business." Contini was repeatedly praised for his solid performance, including his "strong ability to strategize" and his effective relationship management skills.

6. In June of 2018, after being accepted to Stanford University's Graduate School, Bank leadership deemed his area of study so significant that it used its Strategic Investment Fund to cover the entire cost of his coursework.

7. As further recognition of his strong performance and reputation in the Fed, in January of 2017, Contini was delegated (up to 80% of his time) to be Vice Chairman, for two years, and then Chairman, for two years of the national workgroup tasked with introducing methodologies to improve data quality and reliability in the Federal Reserve system ("SEAMS"). As the Vice Chairman of SEAMS, Contini was also the Chair of the Edit Methodologies Conference as defined in the charter. In these roles, Contini reported to the Board of Governors leadership and supported the national organization's policy-making function. Lisa Bell, Head of Statistics Function Management at the Federal Reserve Board of Governors (BOG), requested Contini for this role. Maureen Savage ("Savage"), Contini's second-level manager, supported Contini's appointment.

8. On June 13, 2018, Contini began a medical leave to address a mental health condition. Contini was diagnosed with Major Depressive Episode (severe), PTSD, and Generalized Anxiety Disorder. His condition qualified him for leave protected by the Family and Medical Leave Act ("FMLA").

9. A nurse practitioner working on behalf of the Fed, Christina Knight ("Knight"), routinely reviewed the records of his ongoing medical treatment and regularly spoke with Contini about his condition.

10. Knight updated Contini's manager and a Human Resources representative about the progress of his treatment and condition, making the Fed fully aware of the details of Contini's condition and treatment.

11. On October 31, 2018, Contini informed his supervisor Jack Wozek ("Wozek"), that his medical provider cleared him to return to work. However, Knight told Contini that, according to Wozak and Contini's next-level manager, Savage, it was "not good timing" for him to return. The Bank twice unilaterally postponed Contini's return to work. The Bank finally allowed Contini back to work 64 days later, on January 3, 2019.

12. Upon Contini's return, the Fed did not return him to the same position as required by the FMLA. Instead, his superiors, Savage and Wozek, informed him that the Fed had relocated him to a much smaller office, given him a new title and lower pay, removed his supervisory duties, and barred him from speaking to staff unless it was "light and equitable." Contini was also removed from his prestigious Chair role on SEAMS. These actions, including the delay in allowing Contini to return to work, were in retaliation for his taking FMLA-protected leave.

13. Among other things, Contini's managers claimed these moves were required because of poor survey feedback from Contini's subordinates. These claims are false and pretextual. It was *Savage and Wozek* who received the poor survey feedback. Contini, in fact, received *positive* feedback, making the basis for the changes false and pretextual.

14. On March 7, 2019 around 4pm, while in his office, Contini lost consciousness. Upon returning to work the next day, Contini reported this medical incident to his managers, Savage and Wozek, and was evaluated by Knight.

15. On March 27, 2019, Contini's managers announced a reorganization that removed an entire business line from Contini's purview.  He also was assigned to a new direct supervisor.

16. On April 23, 2019, Savage and Wozek delivered Contini's 2018 annual review citing successful performance.

17. On April 24, 2019, Savage and Wozek delivered an interim review and suddenly placed Contini on an "Initial Warning."  This warning included vague assertions that Contini was late in producing work, failed to follow through, and did not take initiative in assignments.  These assertions are false.  The warning also falsely accused Contini of "being asleep at his desk" and can only have been a reference to his loss of consciousness due to his medical condition.  The false accusation in the Initial Warning illustrates that the Defendant was penalizing Contini as a pretext.  The Defendant was actually motivated by bias against his medical condition.

18. Contini protested the Initial Warning because of its numerous inaccuracies.  Savage and Wozek nonetheless kept it in place, making only inconsequential modifications. It expired on June 24, 2019.

19. Contini met the goals of the Initial Warning before its expiration.  Despite his achieving the goals, his managers placed him on a Final Warning on July 2, 2019. The Final Warning was to expire on September 3, 2019.

20. In issuing the second round of unwarranted discipline, Contini's managers again relied on deficiencies in his performance that were false.

21.  The Bank's warnings were not genuine efforts aimed at leading to improvement in Contini's (excellent) performance but were instead intended as a pretext to force him out

of his position.  For example, they claimed he failed to produce a high-level summary of a project he sponsored in 2017 and 2018.  However, all staff who were involved in the project had left the bank, making such a summary impossible to complete.  By requiring Contini to summarize the work of people who were no longer at the bank, the Fed was setting him up to fail.

22. Wozek and Savage also falsely claimed Contini failed to document roles and responsibilities for members of the management team.  Contini documented roles and responsibilities of the management team several times.  He had to recreate his documentation because the Fed implemented a reorganization that was planned in October while Contini was out on protected leave, moving an entire business line from Contini's purview and assigning him to a new supervisor, Steve Gendron ("Gendron").

23. Contini's managers blamed him for performance failures that occurred because he was out of work on medical leave for a disabling condition.  For example, they claimed he failed to document 2019 unit goals and objectives.

24. However, he was still on medical leave when the information that he needed to complete this document was disseminated and he never received it.  Although Savage and Wozek penalized him for failing to do the assignment, neither they nor anyone at the Fed provided Contini the information required to do it.

25. The accusation that Contini regularly slept in his office is false.  Contini never slept in the office.  The accusation of sleeping in the office only came up after Contini self-reported his loss of consciousness as a medical incident. The claim was intended as a pretext to justify discriminatory acts.

26. On July 25, 2019, the Fed's human resources department called Contini to a mandatory meeting with its HR Offboarding Specialist , Erin Dwyer ("Dwyer") and a Recruiter, Todd Matthews ("Matthews").  Matthews and Dwyer falsely accused Contini of behaving "erratically" *in the office* the day before, July 24th.  Dwyer claimed that Contini's alleged erratic behavior required that he be removed immediately for safety reasons and escorted Contini off Bank property.

27. The basis of the removal from the premises was false.  Contini had not even been in his office on July 24th.  As the Fed knew, he was at a teambuilding exercise with his staff members, some of whom Contini transported to/from the event.  Savage, Wozek, and Gendron approved this exercise, and Gendron attended the teambuilding and also transported employees to the event.

28. As a condition to return to work, the Fed ordered Contini to take a drug test, and despite objecting, he complied.  He told his managers that he wanted to speak to an attorney.

29. On July 29, 2019, the Fed informed Contini that he passed the drug test and was able to return to work the following day. Contini returned to work on July 30, 2019 and asked Savage, Wozek and Gendron for information related to the alleged erratic behavior of July 24 that was a safety concern and requested his employee file to view the report for more information and issue a response.

30. Savage and Wozek left the room stating they would go talk human resources.

31. Gendron invited Contini to lunch.  They had lunch in Gendron's office while Gendron and Savage communicated via Skype.

32. Gendron told Contini that Savage was "working on getting him home" and wanted to make sure he "got home safely".

33. Contini wanted to go home himself but over his protests, Savage escorted Contini to the garage at the Fed, where an armed police officer and Wozak were waiting with an unmarked police vehicle to drive Contini to his home in Provincetown.

34. Contini asked about his vehicle which he parks in Chinatown and Savage stated it would be "figured out later". Contini requested that HR contact him when they had the information he sought.

35. On July 31, 2019, Wozak asked Contini to speak with him.  Instead, Contini informed Wozek that he wanted to talk with a lawyer regarding this matter, as he believed his rights were being violated.

36. On August 1, 2019, the very next day after Contini complained of violations of his rights, the Fed responded to his complaint by terminating Contini.

37. After Contini's termination, he sought medical insurance through MassHealth.  The Bank falsely reported to the Commonwealth of Massachusetts that it was paying Contini a severance.  The Bank's false statement barred Contini from receiving medical insurance through MassHealth.  As a result, Contini is personally responsible to pay thousands of dollars for medical procedures.

38. As a result of the Fed's actions, Contini has suffered damages, including lost pay and benefits, emotional distress, and the loss of his 18-year career.

39. Contini has exhausted his administrative remedies.

## COUNTS

### COUNT ONE
### Disability Discrimination

40. The Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

41. Contini is disabled under the definition of the ADA.

42. Contini is a "qualified" individual with a disability under the ADA because he is – and at all relevant times was - able to perform the duties of his position, with or without accommodation.

43. The Defendant took adverse employment actions against Contini because of his disability.

44. As a result of the Defendant's actions, the Plaintiff has suffered damages.

## COUNT TWO
## Failure to Accommodate

45. The Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

46. Contini requested reasonable accommodations for his disability, including medical leave with a return to his usual position and schedule modifications.

47. The Defendant failed to provide a reasonable accommodation, even though it would not have imposed an undue burden to do so.

48. As a result of the Defendant's actions, the Plaintiff has suffered damages.

## COUNT THREE
## Retaliation under ADA
## (42 U.S.C. § 12203(a))

49. The Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

50. Contini engaged in protected conduct under the ADA by taking medical leave for his mental health conditions.

51. The Defendant took adverse actions against Contini due to his protected conduct.

52. As a result of the Defendant's actions, the Plaintiff has suffered damages.

## COUNT FOUR
### Interference with FMLA Rights

53. The Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

54. Contini was entitled to leave under the FMLA and to be returned to his prior position, or a substantially similar position.

55. Contini took FMLA-protected leave from June 13, 2018, to January 3, 2019.

56. At the end of Contini's leave, the Defendant failed to return him to his prior position or one substantially similar.

57. As a result of the Defendant's actions, the Plaintiff has suffered damages.

## COUNT FIVE
### FMLA Retaliation

58. The Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

59. Contini engaged in protected activity under the FMLA by taking FMLA-qualifying leave.

60. The Defendant took adverse action against Contini because of his protected conduct.

61. As a result of the Defendant's actions, the Plaintiff has suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Honorable Court issue judgment in his favor and grant the following relief:

1. Compensatory damages;
2. Attorneys' fees;
3. Costs of this action;

4. Prejudgment interest;

5. Postjudgment interest;

6. Punitive and Liquidated Damages; and

7. Such further relief as the Court deems fair and just.

JURY DEMAND

The Plaintiff hereby demands a TRIAL BY JURY as to every claim and issue so triable.

Respectfully submitted,
Darin Contini
By his attorneys,


*Michael L. Mason*                                    Dated:  September 21, 2020

David E. Belfort (BBO# 634385)
dbelfort@bennettandbelfort.com
Michael L. Mason (BBO# 662244)
mmason@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike St. #300
Cambridge, MA 02141
617-577-8800


Rebecca G. Pontikes (BBO# 637157)
rpontikes@pontikeslawllc.com
Bryn Sfetsios (BBO# 688368)
bsfetsios@pontikeslawllc.com
Pontikes Law LLC
10 Tremont St., 2nd Floor
Boston, MA 02108
617-357-1888